2796.   MILLS *v.* BARTOW LUMBER CO.

1. Where a servant has been injured in the performance of work of his master, and the negligence of a coemployee is involved, whether that coemployee is to be regarded as a fellow servant of the injured servant or as a vice-principal of the master is determined, not so much by the rank or title, if any, used to describe the coemployee, but chiefly by the character of the duties intrusted to him. Under the ordinary relationship of master and servant, it is the master's part to provide the places and instrumentalities of work and an adequacy of competent servants, and to arrange the general system of work, and it is his duty to discharge with ordinary care and diligence the part thus imposed upon him, and an employee performing one of these duties for the master is regarded as the "vice-principal" of the master. The doing of the work itself and the execution of its details fall to the part of the servants, and all engaged in the common execution of the work are "fellow servants."

2. Even though the master or his vice-principal fails to perform any one or more of his absolute or non-delegable duties, still if the servant, with knowledge, actual or constructive, of the master's delinquency in this respect, voluntarily continues in the employment, and hurt ensues to him because of that delinquency, he is considered in law as having waived his right to insist upon the master's performing this duty, or, as it is

commonly said, he has assumed the risk and can not hold the master liable.

3. As the petition plainly shows that the plaintiff's husband, who was a servant of the defendant, met his death as a result either of the negligence of his fellow servants or of risks which he himself had knowingly and voluntarily assumed, the court did not err in sustaining the general demurrer.

DECIDED APRIL 11, 1911.

Action for damages; from city court of Cartersville—Judge Foute.    March 4, 1910.

Mrs. Mills brought suit against the Bartow Lumber Company for the homicide of her husband, who met his death while employed as conductor on one of the defendant's log trains.    It is alleged in the petition that it was the duty of the plaintiff's husband to bring train-loads of logs, loaded by employees of the lumber company, from the forest to the mill, and to unload them.    The cars on which the logs were loaded were flat cars, on the outer edges of which were arranged pieces of timber laid longitudinally, which operated as guards or catches.    These guards or catches were only a few inches high, and were merely designed to keep the bottom layer of logs from rolling off the car.    The subsequent layers of logs were held in position by reason of the fact that they were so placed that each new layer would rest in the grooves between the layer just below it, the load of logs thus rising triangularly.    To keep the logs from being jostled off while the train was in motion, each car was equipped with two chains fastened on the car on the respective sides.    In one of these chains was a hook, and when the other chain was brought over the logs and pulled tight, the hook would be fastened into one of its links, thus keeping the logs secured.    On the day in question, one of the cars was not loaded to its full capacity, and the log chain which came over the logs had been hooked into the other chain at a link several feet from its end, and at a point which happened to be underneath the car.    The car was placed for unloading at the ramp, or platform, and skids were thrown out in order to unload the logs.    The plaintiff's husband went under the car to unfasten the chain, and knocked it loose with a hammer in the usual method.    He then came out from under the car between the skids, and between the car and the unloading platform, when one of the logs, on account of having been improperly and negligently loaded, rolled off the car and pinned him against the platform, and immediately several

other logs rolled down further, crushing his body and finally killing him.

As allegations of negligence it is charged: "Said defendant company provided no appliances or machinery to prevent the logs from rolling off the car when the chain was unloosed, in the event said logs were so placed as to roll off by gravity. Said defendant company did not select or retain servants or employees to hold the logs with cant-hooks, or otherwise, to prevent the same from rolling off until petitioner's husband was out from under said car. Said defendant company omitted and failed to furnish plaintiff's husband with a safe place to work, or in which he could discharge the duties assigned to him by said defendant. Said defendant company did not make rules or regulations for the conduct of its business, so that the logs could be unloaded with proper appliances or machinery as to promote the safety of its servants. It was the duty of said defendant company to furnish plaintiff's husband with a safe place to work, to furnish him with sufficient fellow servants to properly and safely execute the duties assigned to him, to equip such fellow servants with cant-hooks or other appliances or machinery as would enable them to prevent the logs rolling off the car by gravitation until after plaintiff's husband had gotten safely out from under the car and out of reach of the logs, should they fail to be held by their grooves and roll off, and it was their duty to promulgate such rules and regulations as would promote the safety of plaintiff's husband in the discharge of the duties assigned to him, and the failure of said defendant company to perform these positive, absolute, personal, non-delegable, and non-assignable duties toward plaintiff's husband was the natural and proximate cause of his death." The manner in which the car was loaded is also alleged to have been an act of negligence.

The trial court sustained a general demurrer, and the plaintiff excepted.

*John W. Moore, John T. Norris,* for plaintiff.

*Payne, Little & Jones, M. F. Goldstein,* for defendant.

Powell, J. (After stating the foregoing facts.)

1. The defendant was not a chartered railroad company, but merely a sawmill company, and the case, therefore, falls within the general law of master and servant, and not within the purview of any of the special statutes which have been passed regulating the

liability of railroad companies to their employees. Counsel for the plaintiff has made an elaborate argument in an effort to prove that the servants who loaded the logs were not fellow servants of the deceased employee, but were to be regarded as vice-principals of the master. His major premise, that whether the employee is to be regarded as a fellow servant or as a vice-principal is to be determined by the character of the work he is performing, is undoubtedly correct; but his minor premise, that the loading of the logs was a duty which attached to the position of master, rather than to the position of servant, is plainly unsound. It is the duty of the master to arrange the ways, the means, the instrumentalities, and the places by which and through which the work is to be done, and to use ordinary care and diligence to secure an adequacy of workmen, and to provide a general system by which they may do the work with reasonable safety. These are things which naturally fall to the master's part under the relationship of master and servant. The doing of the work is the part of the servant. If the master has provided a reasonably safe method by which the work can be done, and the servants in doing the work act negligently, so that one of their number is injured, the fellow-servant doctrine is applicable, and the doctrine of respondeat superior is not broad enough to make the master responsible for the negligence. The manner in which the employees in the forest loaded the logs on this train was but a part of the execution of the work itself, and the workmen, in doing that labor, were in no sense performing an absolute or non-delegable duty of the master.

2. The proposition is too well established to admit of elaboration or to require the citation of authority that even though the master omits to perform any one or more of his absolute or non-delegable duties, still if the servant, with knowledge of the master's delinquency in this respect, goes forward with the work, he is held to have waived the performance of the duty by the master, and to have assumed the risk. Therefore the allegations in the petition, charging that the defendant was negligent in not providing appliances to prevent the logs from rolling off by gravity when the chains were loosed, and in not placing servants with cant-hooks or other tools to prevent the logs from rolling off, and that the defendant did not make rules or regulations in the conduct of its business of such a nature as to promote the safety of the servants

in unloading the logs, are wholly inadequate to charge the defendant with liability, since the deceased servant, himself the master's agent in charge of this very work, went ahead and unloosed the chain, with full knowledge that the appliances, instrumentalities, and servants which the plaintiff says should have been furnished were not present and had not been supplied. It is a perfectly plain case for the application of the doctrine of assumption of risk, with nothing in the circumstances to suggest an exception. The general allegation that the defendant company omitted to furnish the plaintiff's husband with a safe place to work amounts to nothing, under the other allegations of the petition. The specific duty of furnishing a safe place to work rather relates to the equipment of houses, plants, and other similar structures, though, of course, it is a general duty of the master, as to all times and all places, not to expose his servant to an extraordinary hazard, of which the master has knowledge, actual or constructive, and of which the servant is ignorant, and could not by ordinary diligence acquire knowledge. Nothing is alleged in this case to show any such situation. The petition being fatally lacking as to statement of those matters which are requisite to the imposition of liability upon the master for the servant's death, there was nothing else for the trial judge to do than to follow the law as it has been recognized in this State for nearly a century, and to dismiss the petition on demurrer.

Counsel for the plaintiff very strenuously urges that the tendency and trend of modern thought, both secular and judicial, is toward extending the liability of masters for injuries received by their servants in the course of employment, and to give every injured servant indemnity where it appears that he himself was free from fault. We concede that this is the trend and the tendency, and we may confess that we think it is a very proper trend and tendency; but judges should be governed by the law as it actually is, and should let trends and tendencies be given effect in another way.

*Judgment affirmed.*